1st Case, Michael Brown v. Building Engines Ms. Levine, on behalf of Michael Brown, in his capacity as Equity Holders Agent for the former Equity Holders of LogCheck, I'll use LogCheck as a shorthand and refer to the here in a case like this does not accord with precedent and must be reversed. A court's duty in a contract interpretation case is to read the whole contract, not to isolate certain provisions of it in a vacuum, and it must be done with a view toward effectuating the party's intent. Even if Building Engines' interpretation is reasonable, the only way that 12b-6 dismissal is appropriate is if it is the only reasonable construction. Otherwise, as the Delaware Supreme Court has stated, the Court is not free to disregard extrinsic evidence of what the parties actually intended. You have a defined term, don't you? Yes, Your Honor. Well, isn't that pretty good? In the context of defined terms, those terms function just like any other contract term. Contract terms are controlling if they are not inconsistent with the reasonable expectations of either party. Taking into account the commercial context and construing all the language in the non-movement's favor, definitions are not mechanically substituted as a per se rule. Well, why do the parties bother defining a term if they don't expect it to be applied literally? In this case, the parties defined the term to introduce very, very specific associations. They could have defined a term with a word that was meaningless, such as marshmallow, which would not have invoked any particular associations that were understood in the commercial context of the agreement. But in this case, they used very specific language. They chose the term contemplated and recap, which invokes an association with a narrow, a narrowing effect. The reasonable reader of the contract would understand these words to be meaningful, and otherwise they would be surplused, and that is not a favored construction. But the average reader, I mean, it almost sounds as if you're suggesting what does contemplated recap mean in general, but that's not how we're supposed to read this, because if that's all that was necessary, there wouldn't be a need to then say, this is what it means. In case there's some issue of, well, maybe this is what it normally means, but in this contract, this is what contemplated recap means. That's absolutely right, Your Honor. However, when there's a tension between a defined term's ordinary meaning and the party's definition in the language, that is not controlling as a matter of law. Rather, the tension suggests to me that if you want this to mean, if they want, if the litigants wants this to mean what they're claiming it means, how, in your view, could they do that? If they can't do it by saying contemplated recap means this, because you're saying, nope, that's not consistent with the normal meaning, so you can't get it to mean something else. Excellent question. They could have easily done that without introducing a gratuitous defined term and concept. Sale event before 1231, if that is indeed what the parties had meant, could have easily been drafted in a different way. But Section 2.3e is very clearly drafted to create an overall scheme or plan of acceleration of the earn out payment on any one of the series of events. And the thread between the events is where building engines makes a decision that materially disrupts log check sales pipeline. And therefore, this is the overall scheme or plan. The literalistic reading of contemplated recap as just any sale event would defeat that fundamental bargain. And therefore, the case law does not use formulaic substitution in a case like this. The language used to define it is, in fact, more expansive than the ordinary meaning. The issue of a contract definition varying from the ordinary meaning is one that's uncontroversial. For example, in the only cases cited in support for 12b-6, dismissal on a, on a contract definition fall into this bucket where the term like owner or company, obviously the party's definition isn't exactly congruent with those terms, but it's more specific. Definitions generally perform a limiting function. Not that this is a per se rule, but contract instructions, when you see something so out of keeping between the ordinary meaning and the function of a definition and the overall scheme or plan, this suggests ambiguity and to suggest that the objective reader would, at a minimum, be confused as to what contemplated recap was intended to encompass. Another textual indicator within the agreement is that the rule, the, what I just described as the overall scheme or plan, the drafting structure there is a rule with a carve out. So the rule is acceleration on sale. And, in fact, the rule is acceleration on any kind of decision that is in building engines control and not log checks control that materially disrupts the sales pipeline. The rule is acceleration on sale. Contemplated recap is structured as a carve out. And to your earlier question, Your Honor, that was not necessary. If they didn't want it to be construed according to the rule of rules versus carve outs, they could have easily drafted it without introducing the gratuitous term, otherwise gratuitous term, contemplated recap, which invokes very specific association to what the parties had explicitly contemplated and discussed. The rule and carve out structure under Delaware law, it is tantamount to an evidentiary burden shifting framework where the party seeking to prove the rule has to carry that burden first, then the burden shifts to the party seeking to fall within the exception to the rule. And on a 12b6 motion, any linguistic inferences must be construed in log check's favor. Is there any reason to put that definition in other than to reach the result you don't like? Your Honor, our contention is no. If building engines Can they put the definition in just for this type of case? Your Honor, our contention is that the reason to introduce the contemplated recap was to invoke, incorporate, was to incorporate the party's mutual understanding of what that term meant, which had been discussed quite substantially during negotiations. Understanding that this is extrinsic evidence that's only admissible if the text indicates that it should be brought in. But here it does, because there's no other reason for putting the term contemplated recap in the agreement. Can I just jump in on a slightly different topic? I have a question regarding your pleadings and the question of the diversity of the parties. The complaint says that Mr. Brown is a resident of New York, although it doesn't specify citizen. And more particularly, I'm wondering about building engines. The complaint says that it has offices in both New York and, I guess, Boston. It doesn't allege, I don't believe, where the principal place of business is. Your Honor, I believe it's undisputed that the principal place of business of building engines is Massachusetts. Okay. So, all right. Well, perhaps we might ask you to submit an affidavit on that. Thank you. Thank you. So, in conclusion, it is undisputed that the JLL merger was a sale event and building engines has not proven according to the 12b6 standard that is the contemplated recap. Thank you. Thank you. You've got some rebuttal time. Ms. Wheeling? Yes. Good morning. May it please the Court. I am Emily Wheeling of Morgan, Lewis & Bacchius, and I represent Defendant Appellee Building Engines. This appeal presents a simple case of contract interpretation. Appellant is seeking to retroactively change an unambiguously defined term in the party's merger agreement. Appellant wants to rewrite the definition of contemplated recap to exclude building engines' November 2021 merger with Jones Lang LaSalle or JLL. This would allow Appellant to accelerate an earn-out payment provided for in the agreement. The lower court rightly rejected this argument, and this Court should affirm. To understand what led to this dispute, it's important to understand some of the facts. Building Engines purchased LogCheck on May 28, 2021, for $11 million. The parties also negotiated in their merger agreement an earn-out provision where Appellant's performance in the one year following the merger. LogCheck could accelerate that payment if Building Engines were to undergo a sale event during the earn-out period. However, the parties carved out from that acceleration on sale provision any sale that happened prior to December 31, 2021, which they labeled in the merger agreement the contemplated recap. Building Engines merged with JLL in November 2021, and LogCheck sought to accelerate the merger based on the occurrence of a sale event. When Building Engines invoked the contemplated recap exception, LogCheck brought this action seeking a declaration that contemplated recap, despite its definition, did not include the JLL merger. According to Appellant, this Court should change the definition so that it excludes the merger and allows him to accelerate the earn-out, but that ask goes against fundamental principles of contract interpretation. The authority is clear that you should interpret a contract pursuant to its terms when those terms are unambiguous. The definition of contemplated recap is clearly unambiguous, and Appellant is simply trying to manufacture ambiguity where there is none. First, Appellant argues that the definition creates surplusage in the merger agreement. This is blatantly incorrect. The definition of contemplated recap merely limits the circumstances where the acceleration on sale provision would otherwise apply. Second, Appellant claims that you have to look at the term contemplated and the term recapitalization separately and for their ordinary meanings. The entire point of having a definition in a contract is because the parties do not want their ordinary dictionary definitions to apply. And the fact that contemplated recap creates a single defined term evidenced by any suggestion we look outside the contract goes against the principles of contract interpretation. Lastly, Appellant argues that the definition of contemplated recap could reveal a drafting mistake in the merger agreement. This is irrelevant. There is no need to look outside the merger agreement for anything here because contemplated recap is unambiguous, and Appellant's entire theory of a drafting mistake has absolutely no bearing on the facts. There is no case law that Appellant can point to or rely on that gets around the simple application of the language in the merger agreement to the facts that occurred here. Contemplated recap simply means a sale event that occurred prior to December 31, 2021. The JLL merger was a sale event that occurred prior to December 31, 2021, and on that basis, Appellant is not entitled to declaratory relief. In closing, I'd like to reiterate that the merger agreement is clear and that the JLL merger does not entitle Appellant to accelerate the earn-out payment. This Court can and should affirm the lower court. Thank you. And could you just on the question of the building engine's principal place of business, whether or not that's in Massachusetts, Boston, New York, can you speak to that? Your Honor, we would have to double-check where their principal place of business is. They have since been acquired by JLL, so we would have to look back at their records and determine exactly where their principal headquarters were. All right. Thank you. Thank you. Building engines cannot answer the question as to why the text was drafted the way it was unless contemplated recap was intended to invoke specific associations of contemplated and recap. Contrary to building engines assertion, Logcheck has cited many direct cases on point to the fact that mechanistic substitution is not a per se rule. It's a default that can be rebutted when the text suggests, as there are many reasons that it does here, when the text suggests that there's a question mark here. This doesn't look right. We are not, Logcheck is not attempting to rewrite the agreement. Logcheck is attempting to enforce the clear bargain as demonstrated in Clause 2.3e. Many cases stand for the proposition that definitions can be ambiguous, that contract terms can be ambiguous, and that they must be read in their commercial context and with a view towards construing language in the non-movement's favor. It is building engines that does not have a case on point to why 12b-6 dismissal is appropriate here. In fact, there is no case cited by either party in anywhere in the record that would support that result. Counsel, let me ask you a question about jurisdiction for a minute. Now, you all have contended that this is 1292 jurisdiction. Your opponents contend it's 1291. If we do not agree that we have jurisdiction under 1292 related to injunctive relief, then it comes down to whether we have jurisdiction under 1291, and normally we do not when a party has been given leave to amend, but you never move to amend. And I'm sort of confused as to why. And to come up on appeal, still insisting you would seek leave to amend, even though that would mean going back to the district court a year later and sort of starting this from scratch, why is it that you didn't move to amend? Your Honor, the amendments in question, as is undisputed between the two parties, don't have to do with amending this claim. They have to do with adding breach of contract claims that since this action was brought during the earn-out period and there was still an opportunity to cure those. If they're entirely separate claims, wouldn't you bring an entirely separate case? Your Honor, the lower court granted leave to amend, which we intend to do, but if, for example, as stated in the appellee's brief, they would rather us file a brand-new action, we can. That is just we're — RADCHEC is just looking for the most efficient way to get from point A to point B. And because we, with strong conviction, believe that this particular issue is — controls this case, it would not have been efficient to amend at that time and add those claims without this claim in the mix, because then we could not have introduced extrinsic evidence pertaining to this claim, and there would have been discovery disputes, et cetera. Okay. All right. In conclusion, the lower court's order should be reversed. Thank you very much. All right. Thank you. We'll take the case under adjustment.